UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GILBERT MARRERO ALEJANDRO,
*Plaintiff*,

v().

ANGEL QUIROS *et al.*,
*Defendants*.

No. 3:21-cv-00542 (JAM)

**ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Gilbert Marrero Alejandro is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983. Alejandro primarily alleges claims of deliberate indifference to serious medical needs. Because he has failed to state a plausible claim for relief under federal law, I will dismiss his case without prejudice.

BACKGROUND

Alejandro names twenty-four defendants: DOC Commissioner Angel Quiros, psychologist supervisor Lalitha K. Pieri, psychologist supervisor Joseph C. Coleman, LCSW Lindsey Dickison, LCSW Richard D. Bush, LCSW Shrimattie D. Maniram, LCSW Marva Malone-Lyles, LCSW James V. Castro, LPC William J. Longo, Warden Anthony Corcella, Warden Kristine Barone, Captain "John" Fleming, DOC District Administrator Edward Maldonado, John Does 1-10, and the DOC.[1] Alejandro names the DOC as a defendant in its individual and official capacity, names Quiros as a defendant in only his official capacity, and names the remaining defendants in their individual capacities.[2] Alejandro brings both federal and state law claims.[3]

---

[1] Doc. #1 at 1-2.
[2] *Id.* at 1-2, 5 (¶¶ 7-9).
[3] *Id.* at 3. The Court limits its review for purposes of 28 U.S.C. § 1915A to Alejandro's federal law claims. That is

1

The events underlying this action occurred while Alejandro was housed at MacDougall-Walker Correctional Institution.[4] Alejandro was born in 1984.[5] From 1999 to 2009, Alejandro "established in Puerto Rico a massive psychiatric record involving his serious mental health illness."[6] Alejandro alleges that during his ten years in Puerto Rico, he was involuntarily confined in three or four psychiatric hospitals.[7]

Around 1999, Alejandro had "begun a disturbing history of bodily self-mutilation" in which he "inflicted deep lacerations to his forearm to cause pain and bleeding."[8] Alejandro has made these lacerations on five or six occasions from 1999 to 2021.[9] When Alejandro was fifteen years old, he began to take prescribed psychotropic medication.[10]

In 2009 or 2010, Alejandro moved from Puerto Rico to Bristol, Connecticut.[11] In 2010, he was arrested for murder, and he was convicted for that murder by 2013.[12] He received a sentence of 60 years' imprisonment.[13]

In 2013, prior to his sentencing, the probation office interviewed Alejandro pursuant to a court order.[14] The pre-sentencing investigation report stated that Alejandro had a serious mental illness and the report was provided to both the sentencing court and the DOC.[15]

---

because one of the purposes of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. *See Hamlin v. City of Waterbury, et al.*, 2017 WL 4869116, at *1 n.1 (D. Conn. 2017).

[4] Doc. #1 at 4 (¶ 6).
[5] *Id.* at 6 (¶ 10).
[6] *Ibid.*
[7] *Ibid.*
[8] *Id.* at 7 (¶ 11).
[9] *Ibid.*
[10] *Ibid.*
[11] *Id.* at 7 (¶ 12).
[12] *Id.* at 7-8 (¶ 13).
[13] *Ibid.*
[14] *Id.* at 8 (¶ 14).
[15] *Ibid.*

From 2010 to 2021, the DOC placed Alejandro on suicide watch on six or more occasions, each lasting several days.[16] During this time, Alejandro "repeatedly sought and demanded that he be housed on a single-cell status" due to his serious mental health issues that he states "ha[ve] repeatedly caused violent fights and threats that he will kill his cellmate."[17] Alejandro has experienced multiple violent altercations with his cellmates and other inmates—all allegedly due to his mental health issues—and has sustained serious bodily injury to his shoulder as well as pain and suffering.[18]

From 2016 to 2021, Alejandro made multiple verbal and written communications to defendants Pieri, Coleman, Dickison, Bush, Maniram, Malone-Lyles, Castro, Longo, Barone, Corcella, Fleming, Maldonado, and Does 1-10, seeking a single cell.[19] Alejandro claims that he was "maliciously denied the single-cell status which had and continues to cause him harm to his serious mental health illness," placing "other inmates in serious danger of being violently assaulted or killed" by him.[20] Alejandro alleges that he has also made an Americans with Disabilities Act claim for a special accommodation for single-cell status.[21] As a result of the defendants' denials of his requests, Alejandro alleges that he has suffered from "anxiety, fear, pain-and-suffering, deprivation of sleep, self-mutilations, mental anguish, emotional distress of a severe kind," hallucinations in the form of hearing voices, "severe schizophrenia," "personality and psycholic disorders," post-traumatic stress disorder ("PTSD"), "anti-social and borderline traits," paranoia, "delusional thinking," and "adjustment disorder depressed."[22]

---

[16] *Id.* at 8 (¶ 15).
[17] *Id.* at 8-9 (¶ 16).
[18] *Ibid.*
[19] *Id.* at 9 (¶ 17).
[20] *Ibid.*
[21] *Id.* at 10 (¶ 18).
[22] *Id.* at 10-11 (¶ 19).

On June 25, 2018, Alejandro was placed under camera surveillance in a "mental health observation prison cell," called an "IPM," for seven days while he was completely naked, except for an "anti-suicide" gown.[23] During this time, Alejandro spoke with Pieri, asking her why she ordered him to be placed in the IPM.[24] Pieri stated that she was worried about the safety of the other inmates.[25] Alejandro states that he informed Pieri, Corcella, and Maldonado about his "history of assault on inmates and/or attempting to murder his cellmates" at MacDougall on January 15, 2016, and that he suffered a serious injury to his shoulder that required surgery.[26] Pieri told Alejandro that she planned to speak with the security prison officials about single-cell status for him, but Alejandro alleges that she "failed to pursue the matter in a diligent manner."[27]

Alejandro also alleges that he has been unconstitutionally subject to the DOC's disciplinary process.[28] On January 26, 2021, Alejandro was issued a disciplinary report for refusing to leave the Restrictive Housing Unit ("RHU") in an effort to avoid having a cellmate in his new housing location.[29] The infraction was later dismissed.[30]

That same day, Alejandro was issued another disciplinary report for "covering up his cell door window obstructing security staff from viewing the plaintiff within his cell and refusing to remove the obstruction."[31] Alejandro received six days in punitive segregation, seven days' loss of recreation, thirty days' loss of social visits, and fifteen days' loss of Risk Reduction Earned

---

[23] *Id.* at 16-17 (¶ 22).
[24] *Ibid.*
[25] *Ibid.*
[26] *Ibid.*
[27] *Ibid.*
[28] *Id.* at 11-15 (¶ 20).
[29] *Ibid.*
[30] *Ibid.*
[31] *Ibid.*

Credits ("RREC").[32] Alejandro claims that the guilty plea he entered with regard to this report was due to "mental duress" and that this makes his guilty plea invalid.[33]

Alejandro received a third disciplinary report on January 26, 2021 for "self-mutilation by cutting his forearm and causing heavy bleeding," again receiving six days in punitive segregation, seven days' loss of recreation, thirty days' loss of social visits, and fifteen days' loss of RREC.[34] Again, Alejandro alleges that his guilty plea was given under duress and that it is therefore invalid.[35] Alejandro alleges that defendant Does 1-10 of the prison mental health staff "unconstitutionally permitted" all three of these January 26, 2021 disciplinary reports to be issued by security staff.[36] According to Alejandro, the defendants forced him to "select his cellmates as an unconstitutional alternative" in violation of his constitutional and statutory rights.[37]

The complaint states the following ten claims or counts:

*Count One.* Alejandro first alleges that defendants Pieri, Quiros, Coleman, Dickison, Bush, Maniram, Corcella, Malone-Lyles, Castro, Longo, Barone, Fleming, Maldonado, and Does 1-10 were deliberately indifferent to his serious mental health needs.[38]

*Count Two.* Alejandro next alleges that defendants Corcella, Barone, Pieri, Coleman, and Maldonado were deliberately indifferent in supervising their subordinates by "permitting them to block, obstruct, [and] ignore the plaintiff's needs for a single-cell status."[39] Alejandro makes a similar allegation against Quiros within the body of his complaint.[40]

---

[32] *Ibid.*
[33] *Ibid.*
[34] *Ibid.*
[35] *Ibid.*
[36] *Ibid.*
[37] *Id.* at 15-16 (¶ 21).
[38] *Id.* at 19-20 (¶¶ 28-30).
[39] *Id.* at 21-22 (¶¶ 31-33).
[40] *Id.* at 17 (¶ 23).

5

*Count Three.* Alejandro's third claim against defendants Pieri, Coleman, Dickison, Bush, Maniram, Malone-Lyles, Castro, Corcella, Longo, Barone, Fleming, Maldonado, and Does 1-10 asserts that each defendant "freely entered and participated in a conspiracy to deprive the plaintiff's federal protected constitutional rights," alleging that this conspiracy was "concerted, planned, discussed, organized, agreed upon, or at the very least, these defendants had a meeting of the minds to deprive the plaintiff" of his constitutional rights.[41]

*Count Four.* Alejandro's fourth claim is a negligence claim against all defendants except the DOC.[42]

*Count Five.* Alejandro's fifth claim is a claim for intentional infliction of emotional distress against all defendants except Quiros and the DOC.[43]

*Count Six.* Alejandro's sixth claim is against defendant Does 1-10 for "bad-faith issuance" of the disciplinary reports as a "state common law tort claim."[44]

*Count Seven.* Alejandro's seventh claim is against defendant Does 1-10 for violation of his due process rights under the Fourteenth Amendment in issuing two of the January 26, 2021 disciplinary reports.[45]

*Count Eight.* Alejandro's eighth claim is against the DOC for violation of the Americans with Disabilities Act by discriminating against him because of his mental health and by denying him special accommodations.[46]

*Count Nine.* Alejandro's ninth claim is against defendants Quiros and the DOC for violation of Article 10(1) of the "International Covenant on Civil and Political Rights," the

---

[41] *Id.* at 22-23 (¶¶ 34-36).
[42] *Id.* at 24-25 (¶¶ 37-43).
[43] *Id.* at 26-27 (¶¶ 44-48).
[44] *Id.* at 28 (¶¶ 49-50).
[45] *Id.* at 29-30 (¶¶ 51-52).
[46] *Id.* at 30-31 (¶¶ 53-54).

Convention Against Torture, the United Nations' ("UN") "Standard Minimum Rules for the Treatment of Prisoners," and the Convention on the Rights of Persons with Disabilities.[47]

*Count Ten.* Alejandro's tenth claim is against defendants Quiros and the DOC for violation of customary international human rights laws, namely the UN's Universal Declaration of Human Rights and the "Final Act of the Conference on Security and Cooperation in Europe," also known as the Helsinki Accords.[48]

Alejandro seeks declaratory and injunctive relief, compensatory damages, and costs.[49]

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[47] *Id.* at 31-32 (¶¶ 55-56).
[48] *Id.* at 33-36 (¶¶ 57-59).
[49] *Id.* at 36-38 (¶¶ 60-66).

*Claims against the DOC*

As a threshold matter, Alejandro includes the DOC as a defendant. But the DOC is an entity of the State of Connecticut and is, therefore, not a "person" subject to suit for a violation of the Constitution under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012). Accordingly, I will dismiss each of Cunningham's claims against the DOC.

*Eighth Amendment deliberate indifference to mental health and safety*

Alejandro alleges that Pieri, Quiros, Coleman, Dickison, Bush, Maniram, Corcella, Malone-Lyles, Castro, Longo, Barone, Fleming, Maldonado, and Does 1-10 were deliberately indifferent to his serious mental health needs by denying him single-cell status.[50]

The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII. The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm or to the serious medical needs of a sentenced prisoner. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner does not otherwise have a general constitutional right to be housed in a single cell or to have single-cell status. *See Germano v. Cook*, 2020 WL 264763 at *11 (D. Conn. 2020) (citing cases).

A deliberate indifference claim under the Eighth Amendment has two requirements. First, the prisoner must allege that he was subject to an objectively serious risk of harm or serious medical need, as distinct from what a reasonable person would understand to be a minor risk of harm or minor medical need. Alejandro alleges that he suffers from a litany of serious mental

---

[50] *Id.* at 19-20.

health issues, including anxiety, sleep deprivation, self-mutilation, hallucinations, schizophrenia, PTSD, and paranoia, among others.[51] For purposes of this order, I will assume that these issues are serious enough to satisfy the objective prong of the Eighth Amendment standard. *See Currytto v. Furey*, 2019 WL 1921856, at *5 (D. Conn. 2019) (collecting cases).

But Alejandro has failed to plausibly allege the second prong—that any defendant was recklessly indifferent to his medical needs. Alejandro must allege that the defendants acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. In other words, he must allege that they were aware that he would be seriously harmed if they did not act. *See, e.g.*, *Spavone v. N.Y. Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

Alejandro has not plausibly alleged that. He claims in a conclusory manner that "[t]hroughout the period of 2016 and up to the period of 2021, the plaintiff had made verbal and written communications with the defendants" to demand single-cell status "due to his serious mental health illness and violent assaultive behavior.[52] But a complaint that lumps all the defendants together by means of a sweepingly general allegation of wrongdoing does not plausibly allege a claim for relief against any one defendant and denies each individual defendant fair notice of what the plaintiff alleges that the individual defendant did wrong. *See Clary-Butler v. AFSCME Loc. 3144 Union*, 2017 WL 1393691, at *2 (D. Conn. 2017). Absent allegations that are particularized to specific persons in terms of what they were told and how they responded, the complaint does not allege facts to plausibly establish that their actions or inaction were the

---

[51] *Id.* at 10-11 (¶ 19).
[52] *Id.* at 9-10 (¶¶ 17-18).

product of subjectively reckless indifference to Alejandro's health or safety. Accordingly, I dismiss the claim for deliberate indifference under the Eighth Amendment.

### *Supervisory liability*

Alejandro alleges that defendants Corcella, Barone, Pieri, Coleman, and Maldonado were deliberately indifferent in supervising their subordinates by "permitting them to block, obstruct, [and] ignore the plaintiff's needs for a single-cell status."[53] The Second Circuit has clarified the standard for supervisory liability and ruled that "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Here, the complaint does not allege any non-conclusory facts to establish the personal involvement of any of the alleged supervisory defendants. Accordingly, I dismiss the claim for supervisory liability.

### *Conspiracy*

Alejandro alleges that each defendant except Quiros and the DOC "freely entered and participated in a conspiracy to deprive the plaintiff's federal protected constitutional rights," alleging that this conspiracy was "concerted, planned, discussed, organized, agreed upon, or at the very least, these defendants had a meeting of the minds to deprive the plaintiff" of his constitutional rights.[54] In order to state a claim for conspiracy under § 1983, a plaintiff must allege: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). But while Alejandro alleges a widespread conspiracy among the defendants,

---

[53] *Id.* at 21-22 (¶¶ 31-33).
[54] *Id.* at 22-23 (¶¶ 34-36).

he pleads no facts about the nature of this conspiracy beyond its existence. This is not sufficient to state a conspiracy claim under § 1983. *See id.* at 325 ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed."). Accordingly, I will dismiss Alejandro's conspiracy claim.

### *Due process*

Alejandro claims that when the defendants punished him for misbehaving, they violated his right to due process because his misbehavior was caused by a mental illness.[55]

The Due Process Clause of the Fourteenth Amendment protects a right to both "substantive" due process and "procedural" due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845-6 (1998); *Wilson v. Santiago*, 2020 WL 1989135, at *3 (D. Conn. 2020). Alejandro does not appear to be challenging the *procedure* by which he was disciplined; instead, he argues that the prison simply had no right to punish him for acts caused by mental illness. Thus, I interpret his claim as one for substantive due process.

He does not state a valid claim. Because "uncertainties about the human mind loom large," governments get wide leeway in how they punish acts caused by mental illness. *Kahler v. Kansas*, 140 S. Ct. 1021, 1028 (2020). True, the Supreme Court has left open the possibility that in *some* situations, the government might need to excuse a wrong because of the defendant's mental state. *Id.* at 1027. But there is no general rule that the mentally ill are free from discipline. *Id.* at 1031. Alejandro has alleged only that he is mentally ill, without explaining how that illness affects his culpability or how it caused the acts for which he was disciplined. His allegations are

---

[55] *Id.* at 29 (¶ 52).

not specific enough to state a plausible due process claim. Accordingly, I will dismiss Alejandro's due process claim.

### *Americans with Disabilities Act*

Alejandro alleges that the DOC violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, by discriminating against him because of his mental health issues and by denying him special accommodations.[56] But to the extent that he claims intentional discrimination because he was deprived of single-cell status, this intentional discrimination claim fails because he has not alleged facts to show that any adverse action was taken by the defendants *because* of his mental health illness. *See Walsh v. Coleman*, 2020 WL 7024927, at *5 (D. Conn. 2020) (dismissing intentional disability discrimination claim by prisoner denied single-cell status). Nor does Alejandro allege any plausible failure-to-accommodate claim under the ADA, because he does not allege facts to show that single-cell status is necessary in order for him to have an equal opportunity to receive mental health treatment or other prisoner services and benefits. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72-73 (2d Cir. 2016); *Walsh*, 2020 WL 7024927, at *5. To the contrary, he seeks single-cell status as an end in itself. *See Bird v. Cal. Dep't of Corr. & Rehab.*, 2016 WL 7383307, at *4 (E.D. Cal. 2016) (dismissing a prisoner's failure-to-accommodate claim because "[p]laintiff's request for single cell status does not appear to allege that he is denied access to a program or service," but "[i]nstead, Plaintiff appears to allege that his medical condition is exacerbated by double cell status"). Accordingly, I will dismiss Alejandro's ADA claim.

---

[56] *Id.* at 30-31 (¶¶ 53-54).

*International treaties*

Alejandro's ninth and tenth claims are against defendants Quiros and the DOC for violations of various international treaties and conventions: the International Covenant on Civil and Political Rights, the Convention Against Torture, the UN's Standard Minimum Rules for the Treatment of Prisoners, the Convention on the Rights of Persons with Disabilities, the Universal Declaration of Human Rights, and the Helsinki Accords.[57]

But it is "only when a treaty is self-executing, when it prescribes rules by which private rights may be determined, that it may be relied upon for the enforcement of such rights." *Yuen Jin v. Mukasey*, 538 F.3d 143, 159 (2d Cir. 2008). Moreover, "even if the treaties were self-executing, there is a strong presumption against inferring individual rights from international treaties." *Ibid.*

None of the treaties cited by Alejandro afford him a cause of action in federal court. *See Yuen Jin*, 538 F.3d at 159 (noting that the Convention Against Torture is not self-executing); *Flores v. Southern Peru Copper Corp.*, 414 F.3d 233, 262 (2d Cir. 2003) (noting that the Universal Declaration of Human Rights is non-binding on the United States and that the International Covenant on Civil and Political Rights does not create a private right of action); *Messiah v. Pafumi*, 2014 WL 1671893, at *2 (D. Conn. 2014) (noting that the Standard Minimum Rules for the Treatment of Prisoners are "non-binding guidelines and call upon governments to take certain action" but are "not intended to confer rights upon individuals") (citing *Serra v. Lappin*, 600 F.3d 1191, 1197 (9th Cir. 2010)); *Townsend v. N.J. Transit and Amalgamated Transit Union*, 2010 WL 3883304, at *5 (D. N.J. 2010) (concluding that the

---

[57] *Id.* at 31-36 (¶¶ 55-59).

Convention on the Rights of Persons with Disabilities does not create a federal cause of action). Accordingly, I will dismiss Alejandro's claims under international law.

## CONCLUSION

Alejandro has not stated a plausible claim for relief under federal law, and the Court declines supplemental jurisdiction over his state law claims. Accordingly, the Court DISMISSES this action, and the Clerk of Court shall close this case. If, however, Alejandro believes that there are additional facts that he can allege that will overcome any of the deficiencies identified in this ruling, then Alejandro may file a proposed amended complaint within 30 days of this order which the Court will construe as a motion to re-open and conduct another initial review pursuant to 28 U.S.C. § 1915A.

Dated at New Haven this 16th day of November 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge