UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GILBERT MARRERO-ALEJANDRO,<br> *Plaintiff*,<br><br> v.<br><br>ANGEL QUIROS *et al.*,<br> *Defendants*, | No. 3:21-cv-00542 (JAM) |

**ORDER DISMISSING AMENDED COMPLAINT PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Gilbert Marrero-Alejandro is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 that I subsequently dismissed in an initial review order for failure to state a plausible claim for relief under federal law. In an attempt to overcome the deficiencies noted in the initial review order, Marrero-Alejandro has filed an amended complaint. Because he still has not stated a plausible claim for relief under federal law, I will dismiss his case with prejudice.

### BACKGROUND

Marrero-Alejandro's amended complaint names 25 defendants: Warden Kristine Barone, LCSW (presumably, licensed clinical social worker) Richard D. Bush, LCSW James V. Castro, psychologist supervisor Joseph C. Coleman, Warden Anthony Corcella, LCSW Lindsey Dickison, Captain "John" Fleming, LPC (presumably, licensed professional counselor) William J. Longo, District Administrator Edward Maldonado, LCSW Marva Malone-Lyles, LCSW Shrimattie D. Maniram, psychologist supervisor Lalitha K. Pieri, DOC Commissioner Angel Quiros, District Administrator "John" Rodriguez, John Does 1–10 (identified by Marrero-Alejandro as "DOC mental health personnel and DOC security-custody personnel"), and the

1

DOC.[1] Of these defendants, only Rodriguez was not named as a defendant in the initial complaint.[2] Marrero-Alejandro names the DOC and Quiros in their official capacities and the remaining defendants in their individual capacities.[3] The amended complaint brings the same ten federal and state law claims as the initial complaint.[4] To overcome the pleading deficiencies noted in the initial review order, Marrero-Alejandro has alleged additional facts in the amended complaint.[5]

*Allegations of the amended complaint*

The events underlying this action occurred while Marrero-Alejandro was housed in DOC correctional facilities.[6] In 1999, when Marrero-Alejandro was fifteen years old, he began taking prescribed psychotropic medication.[7] From 1999 to 2009, Marrero-Alejandro alleges that he was involuntarily confined in three or four psychiatric hospitals in Puerto Rico.[8] Between 1999 and 2021, he inflicted deep lacerations on his forearm on five or six occasions.[9]

In 2009 or 2010, Marrero-Alejandro moved from Puerto Rico to Bristol, Connecticut.[10] In 2010, he was arrested for murder.[11] Marrero-Alejandro was convicted in 2013 and sentenced to a prison term of 60 years.[12] In 2013, prior to his sentencing, a state probation office

---

[1] Doc. #21 at 1–2, 11 (¶ 16.c). The Clerk of Court is requested to amend the docket case caption to reflect the fact that the plaintiff's surname appears to be Marrero-Alejandro, not Alejandro. *See id.* at 1; Doc. #14 at 1.
[2] Doc. #1 at 1–2.
[3] Doc. #21 at 1–2, 5–7 (¶¶ 8–10).
[4] *Id.* at 47–64 (¶¶ 56–87); Doc. #1 at 19–36 (¶¶ 28–59). For the reasons noted in the first initial review order, I limit my review of the amended complaint to Marrero-Alejandro's federal law claims. *See* Doc. #11 at 1 n.3.
[5] Doc. #21-1 at 1–3.
[6] Doc. #21 at 4–5 (¶ 6).
[7] *Id.* at 8 (¶¶ 11–12).
[8] *Id.* at 8 (¶ 11).
[9] *Ibid.*
[10] *Id.* at 8–9 (¶ 13).
[11] *Ibid.*
[12] *Ibid.*

interviewed Marrero-Alejandro pursuant to a court order.[13] As a result, the DOC was provided a presentence investigation report stating that Marrero-Alejandro had a serious mental illness.[14]

From 2010 to 2021, the DOC placed Marrero-Alejandro on suicide watch on six or more occasions, each lasting several days.[15] During this time, Marrero-Alejandro repeatedly demanded to be housed in a single cell due to his serious mental illness that he states "has repeatedly caused violent fights and threats that he will kill his cellmate."[16] Marrero-Alejandro has experienced multiple violent altercations with his cellmates and other inmates—all allegedly due to his mental illness.[17] A cellmate altercation that occurred in January 2016 resulted in Marrero-Alejandro suffering a shoulder injury that later required surgical repair.[18]

Following his fight in January 2016, Marrero-Alejandro briefly visited a hospital and was then placed, naked, in a mental health observation room.[19] There, he received a disciplinary report for fighting with his cellmate.[20] This disciplinary report resulted in an 8-day restrictive housing placement.[21] Following his release from restrictive housing, Marrero-Alejandro was transferred to psychiatric care housing.[22] In the time immediately following his January 2016 fight, Marrero-Alejandro claims that each of the 25 named defendants ignored or denied his repeated requests to be granted single-cell status.[23]

---

[13] *Id.* at 9 (¶ 14).
[14] *Ibid.*
[15] *Id.* at 9 (¶ 15).
[16] *Id.* at 9–10 (¶ 16).
[17] *Ibid.*
[18] *Id.* at 10 (¶¶ 16.a–16.b)
[19] *Id.* at 12–13 (¶ 16.d).
[20] *Id.* at 12–13 (¶¶ 16.d–16.e).
[21] *Id.* at 13 (¶ 16.e).
[22] *Ibid.* (¶ 16 f).
[23] *Id.* at 11–12, 14 (¶ 16.c, 16.g).

From 2016 to 2021, Marrero-Alejandro made multiple verbal and written requests for a single cell to each of the 25 named defendants.[24] Marrero-Alejandro claims that his requests were denied.[25] Marrero-Alejandro also alleges that he has made an Americans with Disabilities Act ("ADA") request for a special accommodation for single-cell status.[26] As a result of the defendants' denials of his requests, Marrero-Alejandro alleges that he has suffered from "anxiety, fear, pain-and-suffering, deprivation of sleep, self-mutilations, mental anguish, emotional distress of a severe kind," hallucinations in the form of hearing voices, "severe schizophrenia, personality and psychotic disorders, post-traumatic stress disorder (PTSD), anti-social and borderline traits, paranoia[,] delusional thinking and Adjustment Disorder Depressed [sic]."[27]

In May 2017, Marrero-Alejandro suffered a "mental health breakdown" and cut his arm.[28] Marrero-Alejandro's self-mutilation prompted DOC officials to place him in segregated housing "completely naked to prevent him from further self bodily harm."[29]

In June 2018, DOC officials elevated Marrero-Alejandro's administrative "mental health level" from 3 to 5.[30] Marrero-Alejandro reports that a "level 5" score indicates "an extremely serious need for security and mental health service intervention."[31] Soon thereafter, Marrero-Alejandro was transferred from segregated housing to a "medical ward observation cell."[32] Upon

---

[24] *Id.* at 14 (¶ 17).
[25] *Ibid.*
[26] *Id.* at 15 (¶ 18).
[27] *Id.* at 15–16 (¶ 19).
[28] *Id.* at 21 (¶ 22).
[29] *Ibid.*
[30] *Ibid.*
[31] *Ibid.*
[32] *Ibid.*

4

observing Marrero-Alejandro, mental health staff determined that he was "severely paranoid" and had "delusional symptoms."[33]

Later in June 2018, Marrero-Alejandro was returned to segregated housing, where he met with psychologist supervisor Pieri to discuss the possibility of dismissing a disciplinary report issued for a recent alleged assault.[34] Pieri informed Marrero-Alejandro that his mental illnesses caused his destructive behavior, and that she would look into the matter of dismissing his disciplinary report.[35] Marrero-Alejandro alleges, however, that Pieri never actually looked into the possibility of dismissing his disciplinary report.[36]

The same day that Marrero-Alejandro spoke with Pieri, he also submitted an inmate request form asking her to place him on single-cell status.[37] Pieri informed Marrero-Alejandro that her unit—the DOC Mental Health Unit—did not have authority to grant single-cell status, but that she had alerted housing authorities of his concerns.[38]

After receiving Pieri's response to his inmate request form, Marrero-Alejandro filed a "level 1" administrative grievance pertaining to her inability to grant him single-cell status.[39] Warden Corcella denied the grievance, explaining that "[s]ingle cell status is authorized (by) the court system. If authorized we will adhere."[40]

After his level 1 grievance was denied, Marrero-Alejandro filed a "level 2" grievance.[41] District Administrator Maldonado denied the level 2 grievance, writing that "Warden Corcella's

---

[33] *Id.* at 21–22 (¶ 22).
[34] *Id.* at 22 (¶ 22).
[35] *Ibid.*
[36] *Ibid.*
[37] *Ibid.*
[38] *Id.* at 22–23 (¶¶ 22–23).
[39] *Id.* at 23 (¶ 24).
[40] *Id.* at 23–24 (¶ 24).
[41] *Id.* at 24 (¶ 25).

response is appropriate. Courts may provide recommendations for housing, however, the Department of Corrections shall make the final decision based on Mental Health evaluations and mitigating circumstances. In the future when filing an Administrative Remedy you must provide a resolution in which you are seeking [sic]. With this, your Level-2 Appeal is denied and not subject to further review."[42]

Marrero-Alejandro also filed administrative grievances complaining about Pieri's alleged failure to "look into" a potential dismissal of his disciplinary report.[43] On October 16, 2018, Corcella denied Marrero-Alejandro's level 1 grievance.[44] As explanation he wrote: "Your DR (Disciplinary Report) was cleared at the time of the incident. Any MH (Mental Health) concerns discussed afterwards do not apply."[45] Marrero-Alejandro thereafter filed a level 2 grievance, but he never received a response to this filing.[46]

Also in 2018, Marrero-Alejandro alleges that he repeatedly informed LCSW Dickison and LCSW Bush of his need for single-cell status.[47] According to Marrero-Alejandro, Dickison and Bush denied these requests.[48]

In February 2019, Marrero-Alejandro had another mental health breakdown and cut his arm with a shaving razor.[49] As a result, Marrero-Alejandro was transferred to a medical ward and placed on suicide watch.[50] Although Marrero-Alejandro received two disciplinary reports related to his self-mutilation, these reports were ultimately dismissed due to his mental illness.[51]

---

[42] *Id.* at 24–25 (¶ 25).
[43] *Id.* at 25–27 (¶¶ 26–28).
[44] *Id.* at 27 (¶ 28).
[45] *Ibid.*
[46] *Id.* at 28–29 (¶ 29).
[47] *Id.* at 29 (¶ 30).
[48] *Ibid.*
[49] *Id.* at 30 (¶ 32).
[50] *Id.* at 30–31 (¶ 32).
[51] *Id.* at 31 (¶ 32).

Marrero-Alejandro cut his arm again in May 2019.[52] This conduct resulted in three disciplinary reports, which were again dismissed due to Marrero-Alejandro's mental illness.[53]

Later in 2019, Marrero-Alejandro alleges that he repeatedly informed LPC Longo, LCSW Maniram, and LCSW Malone-Lyles of his need for single-cell status.[54] Marrero-Alejandro further reports that Longo, Maniram, and Malone-Lyles "created and/or generated written mental health records in the plaintiff's mental health prison files."[55]

In January 2020, Marrero-Alejandro submitted an administrative ADA request seeking an accommodation for single-cell status.[56] This request read:

> See mental health request and grievances Level #1 and 2 attached for reasonable accommodation. Also in Garner CI Mental Health (Unit) gave me the option to pick … my cell mates. I got it on my mental health record in my cell but they didn't write down on my behavior or mental health plan. I need to be on single cell until the court take[s] a decision on the medical habeas for single cell that I'm working [on] right now.[57]

Marrero-Alejandro appears to allege that counselor supervisor Santana—not a defendant named in this action—responded to his ADA request by temporarily permitting him to select his own cellmate while mental health staff reviewed the matter.[58]

In February 2020, Marrero-Alejandro filed a level 1 administrative grievance contending that Santana had "illegally modified" his ADA request.[59] In April 2020, Warden Barone denied the grievance.[60] As explanation, she wrote that Marrero-Alejandro did not "currently … meet the criteria for single cell status. However, this matter is being reviewed by mental health staff to

---

[52] *Id.* at 31 (¶ 34).
[53] *Id.* at 32 (¶ 34).
[54] *Ibid.* (¶ 35).
[55] *Id.* at 32–33 (¶ 35).
[56] *Id.* at 33–34 (¶ 36).
[57] *Id.* at 34 (¶ 36).
[58] *Ibid.*
[59] *Id.* at 35 (¶ 37).
[60] *Ibid.* (¶ 38).

determine a reasonable accommodation."[61] Marrero-Alejandro thereafter filed a level 2 grievance that was later denied by one of the John Doe defendants alleging that Marrero-Alejandro already met with LCSW Castro about the accommodation request.[62]

In March 2020, Marrero-Alejandro submitted a written request to psychologist supervisor Coleman seeking a meeting with Coleman, Castro, and Johnson to discuss his ADA request for single-cell status.[63] Coleman responded to this request by noting that he had discussed the matter with Marrero-Alejandro's unit manager, and determined that "there are no M.H. (Mental Health) indications to alter the housing arrangement currently in place."[64]

In April 2020, Castro wrote Marrero-Alejandro to inform him that his "ADA request to pick a cellmate has been approved by M.H. (Mental Health Unit) and your ADA coordinator, your unit manager have been informed of M.H. support."[65]

In January 2021, John Does #1 through #10 authorized the security staff to issue three disciplinary reports to Marrero-Alejandro for separate incidents of alleged misconduct.[66] One of these reports was dismissed but the other two resulted in adjudications of guilt.[67] The infractions collectively resulted in Marrero-Alejandro spending 12 days in punitive segregation, 14 days loss of recreation, 60 days loss of social visits, and 30 days loss of Risk Reduction Earned Credits ("RRECs")—DOC's version of good-time credits.[68] At some unspecified period prior to the issuance of the reports, Marrero-Alejandro had conversed with Captain Fleming, who had

---

[61] *Id.* at 35–36 (¶ 38).
[62] *Id.* at 36 (¶¶ 39–40).
[63] *Id.* at 36–37 (¶ 41).
[64] *Id.* at 37 (¶ 41).
[65] *Id.* at 37–38 (¶ 42).
[66] *Id.* at 16–19 (¶¶ 20.a–20c), 38 (¶ 43).
[67] *Id.* at 17–20 (¶¶ 20.a–20.c).
[68] *Id.* at 18–20 (¶¶ 20.b–20.c); *see* Conn. State Dep't of Corr., *Risk Reduction Earned Credit*, available at https://portal.ct.gov/DOC/Miscellaneous/Risk-Reduction-Earned-Credit-NEW-2-1-2016 (last accessed Feb. 2, 2023) [https://perma.cc/MZ99-MPNC].

previously granted him special accommodation "to avoid a conflict situation over the single cell status."[69]

Later in January, Marrero-Alejandro wrote to Barone to inform her that the DOC had violated his Eighth Amendment and ADA rights by "modifying" his ADA request as seeking permission to select a cellmate.[70] Marrero-Alejandro also asserted that he was wrongly disciplined for refusing to accept a new cell assignment, because he had not been given an opportunity to select his cellmate.[71] Barone responded to Marrero-Alejandro's letter by informing him that Johnson had allowed Marrero-Alejandro to select his own cellmate.[72]

In February 2021, Marrero-Alejandro filed a level 1 grievance related to Barone's response to his recent written complaint.[73] Barone denied this grievance, writing:

> Your last Request for Reasonable Accommodations … was modified for you to be allowed to pick your cellmate on a temporary basis until we get mental health view on the matter. Per mental health this is a recommendation only, it's not considered an accommodation that has to be followed. I concur with mental health that this is a recommendation only. This is not an accommodation that DOC has to uphold. However, you will be allowed to continue to communicate with your current Unit Manager regarding a suitable cellmate. Therefore, your grievance is denied.[74]

In May 2021, Marrero-Alejandro filed a level two grievance that was later denied by District Administrator Rodriguez, who wrote: "You are appealing a level one grievance regarding an ADA Accommodation at [MacDougall-Walker Correctional Institution]. The response given by Warden Barone was thorough and appropriate. Your level 2 grievance appeal is denied."[75]

---

[69] *Id.* at 39 (¶ 45).
[70] *Id.* at 38 (¶ 44).
[71] *Id.* at 38–39 (¶ 44).
[72] *Id.* at 38–39 (¶¶ 44–45).
[73] *Id.* at 40 (¶ 46).
[74] *Ibid.*
[75] *Id.* at 41 (¶ 47).

### *Claims of the amended complaint*

As noted above, I have previously issued an initial review order dismissing Marrero-Alejandro's first complaint without prejudice. *See Alejandro v. Quiros*, 2021 WL 5324905 (D. Conn. 2021). Now Marrero-Alejandro has filed an amended complaint alleging the following ten claims:

*Count One.* Marrero-Alejandro first alleges that all the defendants, aside from the DOC, were deliberately indifferent to his serious mental health needs.[76]

*Count Two.* Marrero-Alejandro next alleges that defendants Corcella, Barone, Pieri, Coleman, Maldonado, and Rodriguez were deliberately indifferent in supervising their subordinates by "permitting them to block, obstruct, [and] ignore the plaintiff's needs for a single-cell status."[77]

*Count Three.* Marrero-Alejandro alleges that all of the individual capacity defendants conspired to deprive him of his constitutional rights.[78]

*Count Four.* Marrero-Alejandro alleges a claim for negligence against all defendants.[79]

*Count Five.* Marrero-Alejandro alleges a claim for intentional infliction of emotional distress against all individual capacity defendants.[80]

*Count Six.* Marrero-Alejandro alleges a claim against defendants John Does 1–10 for "bad-faith issuance" of the disciplinary reports as a "state common law tort claim."[81]

---

[76] *Id.* at 47–48.
[77] *Id.* at 49–50.
[78] *Id.* at 50–51.
[79] *Id.* at 52–54.
[80] *Id.* at 54–55.
[81] *Id.* at 56 (capitalization altered).

*Count Seven.* Marrero-Alejandro alleges a claim against defendants John Does 1–10 for violating his Fourteenth Amendment due process rights by issuing two of the disciplinary reports.[82]

*Count Eight.* Marrero-Alejandro alleges a claim against the DOC for violating Title II of the ADA by intentionally discriminating against him and denying him special accommodations.[83]

*Count Nine.* Marrero-Alejandro alleges a claim against defendants Quiros and the DOC for violations of Article 10(1) of the International Covenant on Civil and Political Rights, the Convention Against Torture, Articles 22 through 32 of the Standard Minimum Rules for the Treatment of Prisoners, and the Convention on the Rights of Persons with Disabilities.[84]

*Count Ten*. Marrero-Alejandro alleges a claim against defendants Quiros and the DOC for violations of customary international human rights laws, namely the United Nations' Charter, the Universal Declaration of Human Rights, and the Final Act of the Conference on Security and Cooperation in Europe, also known as the Helsinki Accords.[85]

Marrero-Alejandro seeks declaratory and injunctive relief, including the immediate provision of a single cell, as well as compensatory damages of $1,500,000, punitive damages of $2,000,000, and costs.[86]

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a government entity or government actors and "identify cognizable claims or dismiss the

---

[82] *Id.* at 57–58.
[83] *Id.* at 58–59.
[84] *Id.* at 59–60.
[85] *Id.* at 61–64.
[86] *Id.* at 64–67.

11

complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." A complaint may not survive an initial review pursuant to § 1915A unless it alleges facts that, taken as true, give rise to plausible grounds for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[87]

A court must "accept as true all factual allegations and draw from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). If the plaintiff is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).

### *Claims against the DOC*

In the first initial review order, I explained that the DOC is not a "person" within the meaning of 42 U.S.C. § 1983 and therefore not subject to a § 1983 suit. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012).[88] Nothing alleged or argued in the amended complaint affects my initial judgment on this matter. Accordingly, I will dismiss Marrero-Alejandro's claims against the DOC.

---

[87] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[88] Doc. #11 at 8.

*Eighth Amendment deliberate indifference*

In the amended complaint, Marrero-Alejandro brings Eighth Amendment deliberate indifference claims against all defendants besides the DOC.[89] Marrero-Alejandro also purports to bring deliberate indifference claims under the Fourth and Fourteenth Amendments.[90] But courts evaluate the deliberate indifference claims of sentenced prisoners exclusively under the Eighth Amendment. *See Gutierrez v. Ruiz*, 2022 WL 17585968 at *3 (D. Conn. 2022) (citing *Charles v. Orange Cnty.*, 925 F.3d 73, 85 (2d Cir. 2019)). I will therefore dismiss Marrero-Alejandro's Fourth and Fourteenth Amendment deliberate indifference claims. *See Baltas v. Rizvani*, 2022 WL 17251761, at *13 (D. Conn. 2022).

An Eighth Amendment deliberate indifference claim is comprised of two elements. First, "the alleged deprivation of adequate medical care must be sufficiently serious." *Paschal-Barros v. Balatka*, 2021 WL 5268000, at *1 (2d Cir. 2021) (quoting *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013)). Second, "the charged officials must be subjectively reckless in their denial of medical care." *Ibid.* (quoting *Spavone*, 719 F.3d at 138).

In the first initial review order, I dismissed all of Marrero-Alejandro's deliberate indifference claims because his pleading was too conclusory in attributing knowledge of his purported need for a single cell to each of the defendants.[91] To address this deficiency in his initial pleading, the amended complaint details communications between Marrero-Alejandro and some of the defendants.[92] But the amended complaint's newly alleged conversations and correspondences do not permit an inference that the defendants were recklessly indifferent to

---

[89] Doc. #21 at 47–48.
[90] *Id.* at 48 (¶ 58).
[91] Doc. #11 at 9–10.
[92] Doc. #21-1 at 2 (¶ 3).

13

Marrero-Alejandro's mental health needs. Rather, they indicate that the defendants gave Marrero-Alejandro's request for single-cell status serious and lengthy consideration. Eventually, the defendants addressed Marrero-Alejandro's concerns by allowing him to provide input in selecting his cellmate. This may not have been the housing decision that Marrero-Alejandro desired. But courts must "accord substantial deference to the professional judgment of prison administrators." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). And an inmate's mere disagreement with the treatment decisions of health providers does not furnish grounds for an Eighth Amendment violation. *See Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998).

Furthermore, Marrero-Alejandro contends that he requires a single cell to protect "the general inmate population" from being "exposed to serious danger of being violently assaulted or killed" by him.[93] While prison officials may have an obligation to take reasonable measures to protect the general inmate population from Marrero-Alejandro's foreseeable acts of violence, *see Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994), Marrero-Alejandro does not have standing to bring such a claim on behalf of another inmate.

Marrero-Alejandro's Eighth Amendment claims are premised, at least in part, on the harm that Marrero-Alejandro brings upon himself by starting fights with his cellmates. The Eighth Amendment requires prison officials to take reasonable measures to protect inmates from some types of self-inflicted harm. *See Young v. Choinski*, 15 F. Supp. 3d 194, 203 (D. Conn. 2014); *Torrez v. Frayne*, 2018 WL 806578, at *2 (D. Conn. 2018). But prison officials are not generally required to protect inmates from the consequences of their own voluntary, assaultive behavior. *See Brown v. Barone*, 2022 WL 17903481, at *4 (D. Conn. 2022). And I am reluctant

---

[93] *See, e.g.*, Doc. #21 at 44 (¶ 50).

to permit a claim that, if recognized as cognizable, would allow any inmate to obtain a single cell simply by making threats of violence. *See ibid.* I will therefore dismiss Marrero-Alejandro's Eighth Amendment deliberate indifference claims.

### *Supervisory liability*

Marrero-Alejandro alleges that Corcella, Barone, Pieri, Coleman, and Maldonado violated his constitutional rights by allowing their subordinates to ignore his need for a single cell.[94] Marrero-Alejandro explicitly brings this claim under a theory of supervisory liability.[95]

In the first initial review order, I explained that prison officials cannot be held liable for § 1983 claims on an independent theory of supervisory liability.[96] Instead, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Because the additional allegations in the amended complaint do not render viable Marrero-Alejandro's § 1983 supervisory liability claims, I will dismiss these claims.

### *Conspiracy*

Marrero-Alejandro alleges that each individual-capacity defendant participated in a conspiracy to deprive him of his constitutional rights.[97] "To state a claim for § 1983 conspiracy, a plaintiff must allege: (1) an agreement between two or more state actors or between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, causing damages." *Eldars v. State Univ. of N.Y. at*

---

[94] *Id.* at 49–50.
[95] *Id.* at 49.
[96] Doc. #11 at 10.
[97] Doc. #21 at 45–46 (¶ 52), 50–51.

*Albany*, 2021 WL 4699221, at *3 (2d Cir. 2021) (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002)).

In the first initial review order, I dismissed Marrero-Alejandro's conspiracy claims because the initial complaint pleaded no facts about the nature of an alleged conspiracy beyond its existence. *See ibid.* ("Complaints containing 'only conclusory, vague, or general allegations' that the defendants engaged in a conspiracy fail to state a claim." (quoting *Ciambriello*, 292 F.3d at 325)).[98] The amended complaint's allegations of a conspiracy are no less conclusory. Accordingly, I will again dismiss Marrero-Alejandro's conspiracy claim.

### *Due process*

Marrero-Alejandro asserts that the defendants violated his due process rights by allowing him to be disciplined for misbehavior caused by his mental illness.[99] In the first initial review order I dismissed these claims—which I construed as exclusively implicating substantive due process—because there is no general rule exempting the mentally ill from punishment. *See Kahler v. Kansas*, 140 S. Ct. 1021, 1028–31 (2020).[100] Nothing alleged or argued in the amended complaint affects my initial ruling on Marrero-Alejandro's substantive due process claim.

In a motion accompanying the amended complaint, Marrero-Alejandro clarifies that he intends for the amended complaint's due process claims to embrace not only substantive but also procedural due process liability.[101] To analyze a procedural due process claim, federal courts "first ask[] whether there exists a liberty or property interest which has been interfered with by the State; the second [step] examines whether the procedures attendant upon that deprivation

---

[98] Doc. #11 at 10–11.
[99] Doc. #21 at 57–58.
[100] Doc. #11 at 11–12.
[101] Doc. #21-1 at 3 (¶ 7).

16

were constitutionally sufficient." *Francis v. Fiacco*, 942 F.3d 126, 141 (2d Cir. 2019). The liberty interest must "subject the prisoner to atypical and significant hardship … in relation to the ordinary incidents of prison life." *Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010).

Neither the 12 days Marrero-Alejandro spent in punitive segregation nor the 14-day loss of recreation qualify as the deprivation of a liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 485–86 (1995) (holding that 30 days in punitive segregation does not create a liberty interest); *Borcsok v. Early*, 299 F. App'x 76, 78 (2d Cir. 2008) ("Even if we include the eleven days that Borcsok spent in the SHU [Special Housing Unit] before the disciplinary hearing with the ninety days he received as part of his penalty, the duration of his confinement was neither atypical nor significant."); *McLellan v. Chapdelaine*, 2017 WL 388804, at *4 (D. Conn) (citing cases), *adhered to on reconsideration*, 2017 WL 3841469 (D. Conn. 2017).

Nor does Marrero-Alejandro's 60-day loss of social visits qualify, given that "a prisoner has no constitutionally protected right to contact or noncontact visits under the Due Process Clause of the Fourteenth Amendment." *McLellan*, 2017 WL 388804, at *4 (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989)); *Griffin v. Cleaver*, 2005 WL 1200532, at *6 (D. Conn. 2005) (citing *Overton v. Bassetta*, 539 U.S. 126, 137 (2003)).

As for Marrero-Alejandro's 30-day loss of RRECs: the loss of RRECs is a sanction that affects the duration of a prisoner's confinement. *See* Conn. State Dep't of Corr., *Risk Reduction Earned Credit*, available at https://portal.ct.gov/DOC/Miscellaneous/Risk-Reduction-Earned-Credit-NEW-2-1-2016 (last accessed Feb. 2, 2023) [https://perma.cc/MZ99-MPNC]. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that when a state prisoner seeks damages in a § 1983 action, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction and sentence and if it would, the

complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court concluded that *Heck* applies to a prisoner's challenge to the disciplinary procedures that result in a change to the prisoner's sentence, including the loss of accumulated good-time credits. *See id.* at 648.

It follows that a prisoner may not proceed with a § 1983 action challenging sanctions imposed pursuant to a disciplinary finding that affect the length of his sentence "unless he has shown that the sanction (or the procedures that led to it, if the procedural defect at issue was critical to the imposition of the sanction) have been overturned through administrative channels or by a state or federal court." *Peralta v. Vasquez*, 467 F.3d 98, 100 (2d Cir. 2006). Because Marrero-Alejandro has not alleged that the loss of 30 days of RREC has been overturned or vacated, the sanction is not open to challenge in this lawsuit on procedural due process grounds. *See, e.g.*, *McLellan*, 2017 WL 388804, at *3; *Pottinger v. Sanchez*, 2016 WL 1254200, at *3 (D. Conn. 2016).

Even if any of the punishments deprived Marrero-Alejandro of a liberty interest, the amended complaint does explain how Marrero-Alejandro was not afforded all the process he was due. An inmate subject to disciplinary confinement is "entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Wheeler-Whichard v. Roach*, 468 F. App'x 28, 30 (2d Cir. 2012) (quoting *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004)). Marrero-Alejandro does not contend that DOC officials deprived him of notice or an opportunity to be heard before they adjudicated him guilty of

disciplinary infractions. Nor does he assert that the hearing or disposition themselves were procedurally defective. And, while Marrero-Alejandro believes that prison officials reached the wrong decision when adjudicating him guilty of disciplinary infractions, he does not contend that these decisions were unsupported by at least some evidence. *See Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir. 2001) (procedural due process requires prisoner disciplinary decision to be based on "some evidence"). The amended complaint's factual allegations therefore do not plead a plausible procedural due process claim.

In sum, the amended complaint does not allege facts permitting an inference that any of the defendants violated Marrero-Alejandro's substantive or procedural due process rights. Accordingly, I will dismiss Marrero-Alejandro's due process claims.

### *Americans with Disabilities Act*

Marrero-Alejandro alleges that the DOC violated Title II of the ADA, 42 U.S.C. § 12101 *et seq.*, which prohibits disability discrimination by public entities, by intentionally discriminating against him and denying him special accommodations.[102] In the first initial review order, I explained that Marrero-Alejandro's intentional discrimination claim failed because he had not alleged facts showing that he suffered adverse action *because* of his mental illness.[103] The amended complaint contains a single conclusory sentence stating that "[t]he discriminatory conduct of the defendant by denying the plaintiff of a single cell status was connected to the plaintiff's disability of having a severe mental health illness."[104] But the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Nor do "[t]hreadbare recitals of the

---

[102] Doc. #21 at 58–59.
[103] Doc. #11 at 12.
[104] Doc. #21 at 42 (¶ 48).

19

elements of a cause of action, supported by mere conclusory statements" suffice to state a plausible claim for relief. *Ashcroft*, 556 U.S. at 678. Accordingly, I will dismiss the ADA claims.

### *International treaties*

Marrero-Alejandro's ninth and tenth claims are brought against Quiros and the DOC for violations of various international treaties.[105] In the first initial review order, I explained why each of the treaties invoked by Marrero-Alejandro do not afford him a private cause of action in federal court.[106] Nothing alleged or argued in the amended complaint affects my initial ruling. Accordingly, Marrero-Alejandro's international treaty claims are, again, dismissed.

## CONCLUSION

Marrero-Alejandro's amended complaint (Doc. #21) does not state a plausible claim for relief under federal law, and the Court declines supplemental jurisdiction over its state law claims. Because Marrero-Alejandro has already filed an amended complaint and it appears that any amendment of his federal law claims would be futile, the Court DISMISSES the federal claims in this action with prejudice and dismisses the state law claims without prejudice to their re-assertion in state court.

It is so ordered.

Dated at New Haven this 18th day of April 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[105] *Id.* at 59–64.
[106] Doc. #11 at 13–14.